## In re MURRAY.

(District Court, D. Connecticut. June 8, 1908.)

1. BANKRUPTCY—APPLICATION FOR DISCHARGE—HEARING BEFORE SPECIAL MASTER.

A referee in bankruptcy acting as a special master in hearing objections to a bankrupt's discharge has no legal right to consider evidence which has been previously taken before him as referee, but must be governed entirely by the admissible evidence produced on the hearing of the application and objections.

2. SAME—DISCHARGE—FAILURE TO KEEP BOOKS.

Evidence *held* not to sustain objections to a bankrupt's discharge on the grounds that he failed to keep books and destroyed books with intent to conceal his true financial condition.

In Bankruptcy. On report of special master recommending denial of discharge.

The following is the report of referee in bankruptcy John W. Banks upon petition for discharge:

To the Honorable James P. Platt, Judge of the United States District Court for the District of Connecticut:

I, John W. Banks, referee in bankruptcy for Fairfield county, in said district, respectfully report as follows:

(1) Said John A. Murray, of Bridgeport, in said district, was duly adjudged a bankrupt on the 31st day of August, 1907.

(2) Said bankrupt filed in court on the 30th day of October, 1907, a petition for discharge which was by order of the court referred to me as special master for further proceedings.

(3) On the 19th day of November, 1907, I mailed to each known creditor of said bankrupt a notice stating the substance of said petition, and that a hearing on the same would be held before the undersigned at his office, No. 1115 Main street, Bridgeport, Conn., on the 29th day of November, 1907, at 2 p. m., and I caused said notice to be published once on said 19th day of November in the Bridgeport Standard, a copy of which publication is annexed to said petition.

(4) At said hearing John B. Nichols, a creditor, appeared by John J. Phelan, his attorney, in opposition to the discharge of said bankrupt, and filed specifications of objection to the discharge of said bankrupt on December 9, 1907.

(5) The specifications alleged two grounds of objection to the bankrupt's discharge: (1) Failure to keep books of account, and (2) destruction of such books as were kept.

The facts relevant to these specifications are as follows: The bankrupt was engaged in the liquor business in Bridgeport from April, 1901, until February, 1903, in partnership with Nichols, the objecting creditor. In February, 1903, he bought out Nichols' interest for one thousand ($1,000) dollars and then continued in business alone until October 10, 1906, when he sold the business for one thousand ($1,000) dollars. About three hundred ($300) dollars of this amount was used by him in payment of creditors and the balance of seven hundred ($700) dollars the bankrupt testified that he used for living expenses, as he was out of employment for some time after the sale. The petition in bankruptcy was filed August 31, 1907. The bankrupt testified that he kept one book, which was a combination ledger and day book, and which from his description of it was more in the nature of a cash book, containing entries of the amounts received and paid out each day. These entries were made from slips of paper which were copied from the cash register each day. In addition to this book, he kept a whisky book and a beer book, which were similar to a grocer's passbook, showing the amounts of whisky and beer, respectively, received by him from the wholesalers with whom he dealt. The bankrupt testified that during his business career he had used seven or eight of the combination ledger and day books, and, when one was filled with entries, he had filed it away, and opened a new one. He had preserved all these books, and had them in his possession at the time he sold out. Upon his original examination at the first meeting of creditors, he testified that he gave up keeping this book six or eight months before he sold out, but later at the hearing upon the specifications of objection to his discharge he said that he continued to use that book until he sold the business. He also testified upon his original examination that, when he sold out, he dumped these books into a barrel in the cellar, and guessed they were there if they had not been taken away, and that he "threw them in the cellar and considered the thing through with." Later at the hearing upon the specifications of objection to his discharge, he testified that he kept these books together with his check book and files containing receipts, correspondence, etc., in a desk in his room over the saloon; that, when he was about to move, he had to take the desk apart in order to move it; and that he then took from it these books, rolled them up in a bundle with checks, check stubs, and check books and put them into a barrel in the cellar, not however intending to

throw them away or leave them there, but to take them with him later. He says that he sold the rubbish in another part of the cellar to a junkman but told him not to take this barrel, but that, when he went to look for it later, he found that the junkman had taken it with the other stuff.

While the books which the bankrupt kept while he was in partnership with Nichols and up to within six or eight months of the time he sold out were far from complete, they were such as a man running a small saloon and employing no bookkeeper, and not being himself a bookkeeper, might naturally keep, and from which taking them altogether a fair idea of his financial condition could probably have been obtained. Nichols, who when a partner was not actually engaged in the business, but looked over the books once a month or so, was evidently satisfied with the information which they contained, both when he examined them as a partner and later as a creditor. If the bankrupt had continued to keep his books in that manner and had preserved them and turned them over to his trustee, he would have complied with all the requirements of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), but he himself says that he ceased to make entries in the combination day book and ledger six or eight months before he sold out, and that when he moved he dumped these books into a barrel in the cellar and left them there. These statements made at the first meeting of his creditors, and before any specifications of objection to a discharge had been filed, were I believe truthful. I am not impressed by his attempt at an explanation made after it became known to him that the objection to his discharge was based upon these acts. He preserved and took with him when he moved four letter files filled with bills, receipts, and correspondence, but left behind him these books which he had preserved throughout his whole business career, and which contained the only record of his business, and which, when wrapped up together, were not larger in bulk than one of the letter files which he took with him. If he really intended to preserve them and take them with him, I can see no possible reason why he should take this small package down two flights of stairs and place it in a barrel which he says contained nothing else. His present claim that he intended to save them, and his explanation of his action in putting them in the barrel, is apparently an afterthought, induced by what he deemed to be the exigencies of the case. I find as a fact, therefore, that the bankrupt did cease to keep the book which was the sole record of his business some six or eight months before he sold out, and that when he sold out he threw away this book and similar ones which had preceded it. Ought this action bar his discharge?

The act no longer requires the specifications to charge that the failure to keep books or their destruction by the bankrupt was with fraudulent intent or in contemplation of bankruptcy. A failure to keep books or their concealment or their destruction by the bankrupt with intent to conceal his financial condition is a bar to his discharge. A man is presumed to intend the necessary consequences of his acts, and direct evidence of such intent is not required in a case where one without any apparent reason ceases to make entries in a book which he had kept throughout his business career, and, when he sells out six or eight months later, throws these books in a barrel in the cellar, although preserving a large mass of bills, correspondence, etc., which would not throw any light upon his financial condition. I find that the bankrupt during the last six or eight months that he was in business with intent to conceal his financial condition failed to keep books from which such condition could be ascertained, and that, with like intent, he so disposed of the books which would have disclosed his condition prior to that period as to place them beyond the reach of his creditors, and thereby in effect destroyed and concealed them.

In my opinion, both specifications of objection to the bankrupt's discharge have been sustained, and the discharge should not be granted.

John J. Phelan, for opposing creditor.
Geo. A. Mullen and J. B. Klein, for the bankrupt.

PLATT, District Judge. In this case Mr. Banks has confused his functions as a referee in bankruptcy and his duties as a special mas-

ter. In re Walder (D. C.) 152 Fed. 489, and cases therein cited. From his hearing on the specifications against the discharge alone, he could not have found the essential facts upon which he bases his recommendation that the discharge be not granted. Plainly and specifically he goes back to the bankrupt's original examination to find some of them.

There is before the court, however, a transcript of the testimony taken at the hearing before Mr. Banks as special master. It is impossible to read that testimony without being satisfied that the bankrupt did not intend to conceal his financial condition when he placed certain books in a barrel in the cellar at the time he sold out his business. His idea was that they were of very little account, and his treatment of them was a mere incident of his work in the final closing out. The testimony is also very clear that he did keep such books up to the time that he sold out. Mr. Banks finds the fact that he failed to keep them for several months by going back to the bankrupt's original examination before him as referee.

Upon the facts before the court, it is right that the discharge should be granted. It is so ordered.